UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

F. S.[1] by and through her parent          :
PAMELA SCARANO
SCARANO,                                    :

         Plaintiff                :          CIVIL ACTION NO. 3:19-1593

      v.                              :                    (JUDGE MANNION)

CRESTWOOD SCHOOL DISTRICT     :
et al.,
                               :
        Defendants

## <u>MEMORANDUM</u>

Before the court is a motion to dismiss for failure to state a claim filed by the defendants Crestwood School District (the "School District") and Kerri Fey ("Fey"). (Doc. 8). For the reasons set forth below, the motion to dismiss will be **GRANTED** for lack of subject matter jurisdiction and the Complaint, (Doc. 1), will be **DISMISSED WITHOUT PREJUDICE**.

---

[1] The court observes that, in captioning her Complaint, Scarano failed to abide by Local Rule 5.2, which indicates, "If the involvement of a minor child must be mentioned, only that child's initials shall be used." M.D.Pa.L.R.5.2(d)(2).

## I.    BACKGROUND

F.S. is a student in the Crestwood School District who suffers from multiple, serious physical and developmental disabilities, and is wheelchair-bound and non-verbal. F.S.'s mother, Pamela Scarano ("Scarano"), enrolled F.S. in the School District's cheerleading program, and expended approximately $300 on uniforms and a backpack. The cheerleading program is "not selective" insofar as no "cuts" are made to those wishing to participate. (Doc. 1, at 3). Scarano alleges the School District refused to make reasonable accommodations to allow F.S. to participate in the program. For example, Scarano alleges that Defendants did not allow F.S. to participate in a photograph with the team when the cheerleading coach, Kerri Fey ("Fey"), "chose to take the team photograph on a hill, rendering it exceedingly difficult for [F.S.] to join the team in her wheel chair." (Doc. 1, at 4). Scarano alleges that F.S. was "excluded" from another team photograph after a homecoming parade on September 30, 2017, when she "was left behind a fence [and] there was no plan to put other cheerleaders with [F.S.] or to include her at all." (Doc. 1, at 4).

- 2 -

Scarano also alleges that F.S. was not ordered a uniform when the School District ordered uniforms for the other team members and that Scarano was forced to order a uniform separately. Additionally, Scarano alleges that F.S. was not asked to have her uniform embroidered like the rest of the team. As a result of Defendants' refusal to provide for reasonable accommodations, Scarano states that F.S. was "forced to cease seeking to participate" in the cheerleading program. (Doc. 1, at 4). Scarano alleges that  the School District "has excluded at least one other participant on the basis of disability," but does not elaborate on the circumstances. (Doc. 1, at 4).

Scarano subsequently enrolled F.S. in the cheerleading program at a different school and she reports that this program has been "very supportive" of F.S. (Doc. 1, at 4). Nevertheless, Scarano states that she sent emails and a letter to Defendants, identifying the problems she encountered with the cheerleading program that remained unresolved.

On September 16, 2019, F.S., by and through Scarano, filed a two-Count Complaint against Defendants. (Doc. 1). She asserts the following causes of action: (1) intentional discrimination against F.S. on the basis of her disabilities in violation of Section 504 of the Rehabilitation Act in Count 1; and

- 3 -

(2) intentional discrimination against F.S. on the basis of her disabilities in violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to Section 1983, as well as a *Monell* claim, in Count 2.

On November 11, 2019, Defendants filed the instant motion to dismiss, (Doc. 8), as well a brief in support, (Doc. 11). Scarano filed a brief in opposition, (Doc. 14), and Defendants filed a reply brief, (Doc. 19). The matter is now ripe for this court's review.

## II.    STANDARD

Defendants' motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. In deciding a defendant's motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. *Estelle v. Gamble*, 429 U.S. 97 (1976). However, the court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143

- 4 -

(3d Cir. 2004). The court also need not accept legal conclusions set forth as factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

In deciding a motion to dismiss, the court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which the plaintiff has identified as the basis of his claim. *See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Additionally, the court should generally grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.    DISCUSSION

Defendants move for dismissal of both Counts of the Complaint. With respect to Count I, Defendants argue it must be dismissed due to Scarano's failure to exhaust administrative remedies as is required under the Individuals with Disabilities Education Act ("IDEA"). The primary focus of Defendants' argument for Count 2's dismissal is that it fails as a matter of law because Scarano has failed to identify similarly situated individuals that were treated differently or to allege intentional discrimination; however, Defendants additionally argue that Count 2 should be dismissed because it is likewise subject to the administrative exhaustion requirement of the IDEA.

The purpose of the IDEA is to "assure that all handicapped children have available to them . . . a free appropriate public education," or "FAPE." 20 U.S.C. §1400(c). In order to receive federal funding to aid in the education of the disabled, states must provide programs that comply with IDEA requirements. 20 U.S.C. §1412. Included in the requirements is that the state have in effect "a policy that assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. §1412(1). This is implemented through use of an "individualized educational program" or "IEP," which is

- 6 -

created for each disabled child and sets out "the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311 (1988); 20 U.S.C. §1412(4). Thus, the IEP is "the centerpiece of the statute's educational delivery system" and "serves as the 'vehicle' or 'means' of providing a FAPE." *Fry v. Napoleon Community Schools*, —— U.S. ——, 137 S.Ct. 743, 753 (2017).

The IDEA "sets forth an administrative mechanism for resolving disputes concerning whether a school has complied," "provides for an impartial due process hearing conducted by the state or local educational agency," and provides "the right to appeal the results to the state educational agency if the due process hearing was conducted by the local educational agency." *Wellman v. Butler Area School District*, 877 F.3d 125, 131 (3d Cir. 2017). Pertinent here, the IDEA "requires parties to use these procedures whenever they seek relief 'available under this subchapter' even if they are pursuing relief under other federal laws." *Id.* (quoting 20 U.S.C. §1415(l)). "Thus, a plaintiff who seeks relief available under the IDEA must exhaust his

administrative remedies before filing a lawsuit, even if he relies on laws other than the IDEA." *Id.*

Here, Scarano's Complaint does not explicitly mention IDEA. Instead, it is brought pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. §794, and Section 1983. Section 504 prohibits discrimination against the disabled in federally funded programs. In particular, it provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

*Id.* To establish a claim under Section 504, a plaintiff must demonstrate that he "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir.2009).

Both Section 504 and the IDEA provide equivalent requirements: They "promise non-discriminatory access to public institutions." *Fry,* 137 S.Ct. at 756. However, Section 504 covers "people with disabilities of all ages, and

- 8 -

do[es] so both inside and outside schools." *Id.* By contrast, the IDEA "protects only 'children' (well, really, adolescents too) and concerns only their schooling." *Id.* at 755. As noted, the IDEA requires administrative exhaustion.

The parties do not dispute that Scarano did not exhaust her administrative remedies. "In the normal case, exhausting the IDEA's administrative process is required in order for the statute to 'grant subject matter jurisdiction to the district court.'" *Haddon Heights Bd. of Educ.*, 90 F.Supp.3d at 334 (citing *Batchelor v. Rose Tree Media School Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) (quoting *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994)). Therefore, if Scarano's claims fall under the IDEA—whether or not the pleading references the IDEA—this court must dismiss the Complaint for lack of subject matter jurisdiction due to the failure to first exhaust administrative remedies.

In determining whether they do, a court must "consider the 'crux'—the 'gravamen'—of the complaint to determine whether a plaintiff seeks relief for 'denial of the IDEA'S core guarantee [of] . . . a free and appropriate education [FAPE]'; if so, then the plaintiff must exhaust his administrative remedies under the IDEA." *Wellman*, 877 F.3d at 127 (internal citation omitted). In

considering whether the gravamen of a plaintiff's complaint is the denial of a FAPE, the Supreme Court in *Fry* posed two hypothetical questions to consider. First, could "the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Wellman*, 877 F.3d at 132 (citing *Fry*, 137 S.Ct. at 756).

Here, the court finds the answer to both questions to be no. Consequently, the court finds that the Complaint concerns denial of a FAPE and alleges, at its core, that F.S.'s injuries related to a FAPE—that is, they were proximately caused when Defendants failed to adhere to the IEP. *See id.*

Scarano argues that the answers to both questions are yes:

> First, [Scarano] could have brought the same claim if the alleged discriminatory conduct occurred at a public facility other than a school, *i.e.*, through a municipal program that offered sports or extracurricular activities. In addition, an adult at the school, *i.e.*, an employee who wished to serve as a coach, but was excluded from doing so based on intentional discrimination arising from that

- 10 -

> individual's disability, could press the same
> grievance.

(Doc. 14, at 14). The court agrees with Defendants, however, that Scarano's cheerleading coach analogy is faulty. It seems apparent that participation in the School District's middle school cheerleading program is not a claim that could be asserted in a non-school setting or by a non-student adult given that non-student adults cannot be student cheerleaders.

Scarano additionally contends that, because her claims pertain only to F.S.'s participation in the cheerleading program, and because the Complaint makes no reference to the adequacy of the special education services provided by the School District, her claims cannot be considered to pertain to denial of a FAPE. As Defendants observe, however, exclusion from full participation in an extracurricular school activity can indeed—and in this case does—constitute an IDEA claim since the IDEA mandates that IEPs include provisions for disabled students to participate in "extracurricular and other nonacademic activities." *See* 20 U.S.C. §1414(d)(1)(A)(i)(IV).

Additionally, courts have previously found similar claims to have involved the denial of a FAPE, even if a FAPE is not explicitly mentioned in

the complaint. *See Wellman*, 877 F.3d at 134 (holding that a student's equal protection claims alleging a failure to ensure that the student was not placed in a dangerous situation at an extracurricular activity, football, pertained to a FAPE); *Ahearn v. East Stroudsburg School District*, No. 3:19-868, 2020 WL 754337, at *6 (M.D.Pa. Feb. 13, 2020) (finding that the gravamen of a student's discrimination claims relating to the use of physical restraints in school pertained to the denial of a FAPE); *J.L. v. Wyoming Valley W. Sch. Dist.*, No. 3:15-1750, 2016 WL 4502451, at *4 (M.D.Pa. Aug. 29, 2016), *aff'd* 722 Fed.App'x 190 (3d Cir.2018) (same with respect to a student's discrimination claims relating to school transportation). As the Third Circuit has stated, "What matters is the crux . . . of the plaintiff's complaint, setting aside any attempts at artful pleading. [When the plaintiff]'s own allegations and claims place[] the denial of a FAPE in this central role, [] [she] cannot negate this fact simply by omitting educational redress from [her] prayer for relief." *J.L.*, 722 Fed.App'x at 194.

Here, both of Scarano's federal claims against Defendants pertain, in large part, to the alleged deprivation of educational services to F.S. and both involve F.S.'s educational experience. *See* Doc. 1, at 6-7 (alleging that

Defendants' discrimination caused F.S. to "suffer substantial educational and developmental losses, including permanent decline in her future development"). Thus, because Scarano's factual allegations are "intertwined with [her] complaints about the school's failure to accommodate [F.S.'s] educational needs, *which include [her] participation in extracurricular activities*, and because such allegations could not be brought by a nonstudent or outside the school setting, the claim set forth in Count [2] seeks relief for failing to provide a FAPE and is subject to exhaustion." *Wellman*, 877 F.3d at 134 (emphasis added) (internal citation omitted).

Scarano next argues that the history of the proceedings suggests that the gravamen of her suit is not the denial of a FAPE. Citing *Fry*'s statement that the "prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE," 137 S.Ct at 757, Scarano argues that the fact she never attempted to pursue administrative remedies indicates her claims are unrelated to a FAPE. This argument is unavailing. Neither *Fry* nor *Wellman* indicated that prior pursuit of administrative remedies is a dispositive factor in the analysis—but, instead, merely something to consider. Scarano's

failure to first seek administrative remedies indicates only that she would prefer to have her case heard in court. Had Scarano first pursued an administrative remedy only to abandon the process in order to seek redress in court, that would indeed suggest an attempt to circumvent administrative review. However, the fact that Scarano did not do so does not, *ipso facto*, mean the reverse—*i.e.*, that her claims are not subject to the administrative exhaustion requirement—particularly where the answer to the two questions that *Fry* specifically directed the court to consider is no.

Lastly, Scarano argues that the futility exception to the exhaustion requirement should apply due to the fact she seeks monetary and punitive damages which an administrative hearing officer cannot award. Significantly, however, the Third Circuit has repeatedly rejected this argument:

> Our conclusion [that the plaintiff failed to exhaust administrative remedies] does not change because [he] requested money damages, which are not available under the IDEA and cannot be awarded at an administrative hearing. We have held that "[t]his is not dispositive" because (1) the complaint did not seek money damages exclusively, (2) district courts are empowered to grant relief beyond that requested, and (3) money damages may sometimes be awarded as reimbursement.

- 14 -

*J.L.*, 722 Fed.App'x at 194. (internal citations and quotation marks omitted). Likewise, here, Scarano did not exclusively seek monetary damages and for the same reasons stated in *J.L.*, the futility exception to the administrative exhaustion requirement does not apply here.

Finally, as an aside, the court notes that, even if Count 2 were not subject to dismissal for failure to exhaust pursuant to the IDEA, it would nevertheless be subject to dismissal for failure to state a claim. As Defendants correctly note, Scarano brings her Count 2 equal protection claim on the basis of F.S.'s physical disabilities and, because physical disability is not a protected class, it must be analyzed under a class-of-one theory. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding that those who are not members of a protected class may bring an equal protection claim under a theory of a "class of one"); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446 (1985) (holding disability is not a suspect class under the Equal Protection Clause). To do so, however, Scarano must identify similarly situated parties and allege that they were treated differently by Defendants. Because she has not done so, Scarano's equal protection claim fails. Although the Complaint makes a vague

reference to "at least one other participant" in the cheerleading program with a disability, (Doc. 1, at 4), Scarano's pleading has fallen short of sufficiently identifying any similarly situated parties that are "alike in all relevant aspects" to F.S. that were treated differently. *Perano v. Twp. Of Tilden*, 423 Fed.App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, [the plaintiff] must allege facts sufficient to make plausible the existence of such similarly situated parties."). Accordingly, even if not subject to dismissal on the basis of failure to administratively exhaust remedies, dismissal of Count 2 for failure to state an equal protection claim would otherwise be appropriate.[2]

---

[2] Because Scarano has failed to state an equal protection claim in Count 2, "it is axiomatic that [her] *Monell* claim[] must also fail as a matter of law." *Bensinger v. Twp. Of Hegins*, No. 3:15-cv-1450, 2016 WL 1232353, at *6 (M.D.Pa. Mar. 30, 2016). Additionally, Scarano's *Monell* claim also fails because she has failed to "specify exactly what the custom or policy was." *McTernan v. City of New York*, 564 F.3d 636, 658 (3d Cir. 2009).

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, (Doc. 8), is **GRANTED**, and the Complaint, (Doc. 1), will be **DISMISSED WITHOUT PREJUDICE**.

An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 3, 2020**
19-1593-01

- 17 -